UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NICOLE K. SINGLETON,
o/b/o J.J.S.                                    Plaintiff,

   v.                                           **DECISION AND ORDER**
                                                14-CV-951S
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                Defendant.

---

1.  Plaintiff, on behalf of her minor child, J.J.S., challenges an Administrative Law Judge's ("ALJ") determination that J.J.S. is not entitled to Supplemental Security Income ("SSI") under the Social Security Act ("the Act").  Plaintiff alleges a disability onset date of February 1, 2010, due to Attention-deficit/hyperactivity disorder (ADHD), Oppositional Defiant Disorder (ODD), and Pervasive Developmental Disorder (PDD).

2.  Plaintiff filed an application for SSI on May 24, 2011.  The application was initially denied on September 19, 2011.  Pursuant to Plaintiff's request, an administrative hearing was held before ALJ David Lewandowski on January 22, 2013, at which time J.J.S., Plaintiff, and their attorney appeared.  The ALJ considered the case *de novo*, and on March 4, 2013, issued a decision finding that J.J.S. was not disabled.  On September 12, 2014, the Appeals Council denied Plaintiff's request for review.  Plaintiff filed the current civil action on November 11, 2014, challenging the Commissioner's final decision.[1]

---

[1] The ALJ's March 4, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On March 16, 2015, the Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 6). The Commissioner followed suit with her own motion on April 23, 2015. (Docket No. 10). For the following reasons, the Plaintiff's motion is granted and the Commissioner's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may

support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

  6. An individual under the age of 18 is considered disabled when he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has established a three-step sequential evaluation process to determine whether a child is disabled as defined under the Act. See 20 C.F.R. § 416.924. Specifically, it must be determined: (1) whether or not the child has engaged in any substantial gainful activity; (2) if not, whether he or she has a "severe" impairment or combination of impairments that cause "more than minimal functional limitations;" and (3) whether his or her impairment or combination of impairments is of listing-level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See 20 C.F.R. § 416.924; see also 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").

Where an impairment medically meets or equals a listed impairment, the child will be found disabled. 20 C.F.R. §§ 416.924(d)(1), 416.925. If a child's impairment or combination thereof does not meet or equal a listed impairment, the ALJ must assess

all functional limitations caused by the child's impairments in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. §§ 416.926(a),(b)(1). A child is classified as disabled if he or she has an "extreme" limitation in one domain of functioning or a "marked" limitation in two domains. 20 C.F.R. § 416.926a(d). A "marked" limitation exists when an impairment or the cumulative effect of impairments "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation "interferes very seriously" with that ability. 20 C.F.R. § 414.926a(e)(3)(i). A child's "day-to-day functioning may be seriously limited when [his] impairment(s) limits only one activity or when the interactive and cumulative effects of [his] impairment(s) limit several activities." 20 C.F.R. § 416.926a(e)(2)(i).

7.  In this case, J.J.S. was a pre-schooler (age 5) on the application date and a school-aged child (age 7) at the time of the decision. (R. 17).[2] The ALJ applied the three-step evaluation and determined that: (1) J.J.S. had not engaged in substantial gainful activity since the application date (id.); (2) J.J.S. had attention deficit hyperactivity disorder (ADHD), pervasive developmental disorder (PDD), and oppositional defiant disorder (ODD), which constituted severe impairments under the Act (id.); and (3) J.J.S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Id.). After assessing all functional limitations caused by J.J.S's impairments in terms of the six domains, the ALJ also concluded that J.J.S.'s impairments do not functionally equal a

---

[2] Citations to the underlying administrative record are designated as "R."

listed impairment.  (R. 17).  Specifically, the ALJ found that J.J.S. has a marked limitation in interacting and relating with others (R. 25); has less than marked limitations in the domains of attending and completing tasks (R. 23), acquiring and using information (R. 22), moving about and manipulating objects (R. 26), and ability to care for himself (R. 27); and has no limitation in health and physical well-being.  (Id.).  Thus, the ALJ found J.J.S. was not disabled.  (R. 28).  Plaintiff challenges the ALJ's determination on behalf of J.J.S. and asserts remand is warranted for further administrative proceedings.

8.    Plaintiff argues that the ALJ failed to adequately explain his finding that J.J.S. had a "less than marked" impairment in the domain of attending and completing tasks.  In support of this contention, Plaintiff maintains: three teachers opined to "serious" problems in this domain, the record largely supports a finding of marked impairment, and the ALJ improperly relied on the finding of consultative psychologist, Dr. Baskin, that J.J.S.'s "attention and concentration were intact." (See R. 24).  Further, Plaintiff argues this alleged error harmed J.J.S. because the ALJ found a marked impairment in the domain of interacting and relating with others, and, consequently, a finding of marked impairment in a second domain would direct a fully favorable decision.

9.    With respect to the domain of attending and completing tasks, the Commissioner considers the claimant's ability to "focus and maintain [his] attention, and how well [he can] begin, carry through, and finish ... activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).[3]  In a brief discussion of this domain, the ALJ stated:

---

[3] The Regulations provide the following examples of limited functioning in this domain:  "(i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.  (ii) You are slow to focus on,

5

> "The claimant has a history of ADHD treated with counseling and various medications. The teacher evaluations document obvious to serious problems in this functional domain. The claimant is easily distracted and requires redirection. He refuses to keep his sneakers on and gets out of his seat without notice. He has a difficult time with transitions and changes in schedule. On the contrary, Dr. Baskin found the claimant's attention and concentration intact." (R. 23-24).

The Court finds that the ALJ's conclusion was not supported by substantial evidence or explained with adequate clarity. The ALJ purportedly gave "great" or "greatest" weight to the various teacher opinions (R. 20), which, along with the other educational evidence, reasonably demonstrate that J.J.S. has a marked impairment in this domain. On the other hand, the ALJ failed to assign any weight to Dr. Baskin's opinion but still relied on her finding that J.J.S.'s "attention and concentration were intact" at the consultative examination to undermine the evidence of J.J.S.'s difficulties in this domain. (R. 24).

10. Here, the record contains various teacher evaluations, school records, and three Teacher Questionnaires,[4] which demonstrate J.J.S. has serious difficulties with activities in the domain of attending to and completing tasks. See Smith ex rel. D.R. v. Astrue, No. 10-CV-053 (GTS), 2011 WL 1113779 at *5 (N.D.N.Y. Jan. 20, 2011) (Teachers are "valuable sources of evidence for assessing impairment severity and

---

or fail to complete activities of interest to you, e.g., games or art projects. (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others. (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing. (v) You require extra supervision to keep you engaged in an activity." 20 C.F.R. § 416.926a.

[4] The Agency's forms separately address the six functional domains, and ask the teacher to rate the child in multiple activities for each domain compared to the functioning of same-aged children without impairments. The ratings are "no problem," "a slight problem," "an obvious problem," "a serious problem," or "a very serious problem," with frequency of monthly, weekly, daily, or hourly. (See, e.g., R. 235). The questionnaire asks about the following activities in the domain of "attending and completing tasks:" 1. Paying attention when spoken to directly; 2. Sustaining attention during play/sports activities; 3. Focusing long enough to finish assigned activity or task; 4. Refocusing to task when necessary; 5. Carrying out single-step instructions; 6. Carrying out multi-step instructions; 7. Waiting to take turns; 8. Changing from one activity to another without being disruptive; 9. Organizing own things or school materials; 10. Completing class/homework assignments; 11. Completing work accurately without careless mistakes; 12. Working without distracting self or others; 13. Working at a reasonable pace/finishing on time. (Id.).

functioning."); see SSR 06–03p, 2006 WL 2329939, at *3 (Aug. 9, 2006) ("An opinion from a 'non-medical source' who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source.").

11. In addition to other activities in this domain, the record reflects J.J.S.'s problems with paying attention and his nearly complete inability to make an effective and undisruptive transition to a new activity during the school day. See 20 C.F.R. § 416.926a(h). For example, June 2010 Individualized Education Program ("IEP") documents state, *inter alia*, that J.J.S.'s "needs" for the coming school year include: "increase his frustration tolerance in order to transition between classroom activities appropriately and make it through a school day without exhibiting outbursts" and "to improve his ability to focus and attend to an adult directed fine motor activity." (R. 169).

12. At the end of the 2010-2011 school year, kindergarten teachers Ms. Maslowski (special education) and Ms. Madden (general education) stated on J.J.S.'s report card that despite "consistent improvement in his academic ability and his behavior this year," J.J.S. "remains unable to focus his attention for more than a short amount of time and prefers to be 'tuned out' of many of the classroom discussions." (R. 177). On June 22, 2011, at the request of the State Agency, the teachers also completed a Teacher Questionnaire. (R. 152-159). Regarding the domain of attending and completing tasks, they indicated that J.J.S. had a "serious problem" with "changing from one activity to another without being disruptive," as well as with "working without distracting self or others." (R. 154). They specifically observed "[J.J.S.] has a tough time with transitions or a change in schedule. He is easily distracted. [He] must

7

complete a task until it is done – he has a difficult time stopping a task when asked." (Id.). Elsewhere in their report, but also relevant to impairments in this domain, the kindergarten teachers stated J.J.S. "has a tough time with playing games/taking turns/sharing." (R. 155). Of note, attending and completing tasks was the *only* domain in which the kindergarten teachers indicated "serious problems" for any activities. (Id.).

13. The record also contains a June 2011 Teacher Questionnaire completed by J.J.S.'s caregivers at his day care center, which he attended daily for 4-8 hours from July 2007 – June 2010, and then for 8 hours per day during school vacations and holidays beginning July 2010 through the date of the report. (R. 138-145). With respect to attending and completing tasks, Ms. Gothard (school age teacher) and Ms. Serveiss (2 yr old teacher) indicated "serious problems" in seven of the thirteen activities, and "very serious problems" in three activities, including waiting to take turns, changing from one activity to another without being disruptive, and working at a reasonable pace/finishing on time. (R. 140). Their narrative indicates "J.J.S. requires a great deal of extra structure and support in any organized activity. The basis of the support is guidance in understanding the activity, the structure to complete the activity and monitoring his behavior and interaction with himself and others." (Id.).

In other domains, the teachers commented on related limitations. It was noted that J.J.S. "[o]ften requires a constant demonstration and repetition of directives," "[o]ften projects [are] begun and then abandoned by other interest, [he] prematurely states 'I'm done' and 'don't want to do that' (to do this anymore) while peers stay engaged and most complete projects and [are] able to follow simple step by step instructions." (R. 139). In addition, they observed J.J.S. has "great difficulty with

patience with self and others and transitioning from one activity to the next if not self-directed" (id.), and that he "has difficulty manipulating a variety of tools and mediums – again challenged in his abilities to concentrate and patience to watch demonstration or accept step-by-step guidance impede his efforts." (R. 142).

14.     An October 2011 report card from the beginning of first grade states that J.J.S. is a "very sweet young boy," and that he "tries very hard to stay on task." (R. 207).  The teacher specifically noted, however, that he "has difficulty working independently and can only follow one step directions," and that he "also has difficulty with the numerous transitions" throughout the day, which "have a tendency to cause [him] to become frustrated and sometimes angry." (R. 207).  Shortly after this report card was issued, J.J.S. switched to a different school; his mother testified that the first school could not accommodate his needs or manage his behaviors, and that J.J.S. "wasn't staying in the classroom" and "he was interrupting." (R. 57).

15.     In April 2012, near the end of first grade, school psychologist, Ms. Carey, noted that "[h]igh activity levels, distractibility, and emotional outbursts have been documented in school and at home" along with "[d]ifficulties with transitions, sitting still, overstimulation, and verbal aggression." (R. 219).  She also opined that J.J.S.'s behaviors related to ADHD and PDD "continue to be exhibited in school on a frequent basis" and "markedly interfere with [his] daily classroom performance, in addition to the learning and safety of self and others." (R. 222).

Also near the end of 1st grade, May 2012 IEP documents indicate that J.J.S. retained certain goals for the following school year, including "needs to increase his ability to maintain attention to task and participate appropriately in all classroom

activities. He also needs to transition appropriately within the classroom." (R. 348). In the same report, the Occupational Therapist's progress note includes, among other comments, "poor spelling and difficulty with transitions are evident", that J.J.S. "is fast, impulsive and displays decreased organizational skills affecting the quality of his work", his "poor visual attention and decreased control of writing tools affect overall quality of written work", and his "sensory processing skills are delayed as he has difficulty attending and requires increased cues to stay on task and follow directions." (R. 349).

16.     Most recently, on December 19, 2012, J.J.S.'s second grade teacher, Ms. Miles, and school psychologist, Ms. Carey completed a Teacher Questionnaire. (R. 233-240). In the domain of attending and completing tasks, the report indicates that J.J.S. had "serious problems" in 8 of 13 areas, including paying attention when spoken to directly, changing from one activity to another without being disruptive, and working without distracting self or others. (R. 235). The narrative states: "(1) highly impulsive, blurts out, never in seat, crawling on floor in hallway" and "(2) refocus and redirection constantly." (R. 235). In addition, Ms. Miles noted on J.J.S.'s first quarter report card that he is "a pleasure to have in class," but he "continues to need a high level of teacher support to organize his personal locker and desk space" and that she must "frequently refocus/redirect his attention to the task and remind him what a learner looks and sounds like," that "[h]e frequently disrupts others right to learn," and "[t]ransitioning from one task to another is an area for improvement." (R. 226). Another teacher advised on the same report card: "[J.J.S.], focus on being a respectful listener and speaker, as well as organizing yourself in the class room." (R. 226).

17.	Regarding the opinion evidence, the ALJ noted that "several teacher questionnaires vary in their descriptions of the claimant's problems." (R. 20). Still, he purported to give "great weight" to the opinions of J.J.S.'s teachers, and, in particular, "greatest weight" to the combined opinion of kindergarten teachers Ms. Madden and Ms. Maslowski. (See R. 21).[5] The ALJ nonetheless found that J.J.S. had less than a marked limitation in attending and completing tasks (R. 23-24) based on the one-time finding of Dr. Baskin, without indicating what, if any, weight he afforded her opinion.

18.	To be sure, the Court finds the record contains some support for J.J.S.'s ability to maintain attention and concentration at times, and that he improved his behavior and skills in certain areas. For example, in the May 2012 IEP report, J.J.S.'s speech therapist noted his "ability to respond favorably to verbal prompts and signals to wait or end his turn, and attend to task has improved considerably" during first grade. (R. 348). The report also states J.J.S.'s mother (Plaintiff) noticed improvement in math and reading (R. 349). Nevertheless, as discussed, the record demonstrates consistent difficulties in this domain. Moreover, the Court notes that J.J.S. educational goals and teacher comments consistently refer to his difficulties with transitions and paying attention, among other relevant activities. See SSR 09-2p ("the fact that the child does not achieve a goal is likely an indication of the severity of the child's impairment-related limitations"). Accordingly, as Plaintiff asserts, the evidence discussed would permit a finding of a marked impairment with regard to this domain.

---

[5] Plaintiff also asserts that remand is warranted because the ALJ erroneously failed to reconcile the teacher opinions when he simultaneously gave "greatest weight" to two disparate reports, referring to the Madden/Maslowski opinion (kindergarten) and the Miles/Carey opinion (second grade). It appears to the Court that the ALJ did not give the "greatest weight" to ALL of the teacher evaluations, rather he afforded greatest weight to the combined evaluation of Ms. Maslowski (special education teacher) and Ms. Madden (general education teacher), dated June 22, 2011. (R. 21) ("the greatest weight is given to the opinions of the claimant's special education and general education teachers. *Their evaluation is* most consistent with the evidence of record")(emphasis added).

19. Thus, while it is apparent the ALJ reviewed the entire record and purported to give great weight to those who had a "substantial longitudinal picture" of J.J.S.'s limitations, (see 20 C.F.R. § 416.927(c)(2) (re: treatment relationships)), he relied on Dr. Baskin's findings based on a single examination to refute the record evidence of J.J.S.'s difficulties in this domain, and did so without explanation. See Quinones on Behalf of Quinones v. Chater, 117 F.3d 29, 35 (2d Cir. 1997) (finding psychologists' reports regarding claimant's concentration, persistence and pace were "at best inconclusive" and did not amount to substantial evidence in support of the Commissioner's decision when measured "against the reports of [claimant]'s teachers, who dealt with her on a daily basis over at least a school year"); accord Pollard ex rel. T.W. v. Astrue, No. 4:07CV1054-DJS, 2008 WL 2813340, at *14 (E.D. Mo. July 18, 2008) ("To accord great weight to the opinion of a one-time consulting examination would be error, especially in the absence of any rationale discounting the opinions and observations made by those with a longitudinal history of working with a child-claimant's impairments.")

Although not raised by Plaintiff, the Court finds the ALJ's reliance on this finding and the lack of explanation perplexing in light of the Commissioner's acknowledgement that "children with some impairments (for example, AD/HD) may be calmer, less inattentive, or less out-of-control in a novel or one-to-one setting, such as a CE." SSR 09-2p, citing 20 CFR 416.924a(b)(6); see Adams ex rel. Williams v. Barnhart, No. 01 CIV.10030, 2003 WL 102824, at *5 (S.D.N.Y. Jan. 10, 2003) (noting "the Commissioner's regulations explicitly state that '[SSA] will not draw references about your functioning in other situations based only on how you function in a one-to-one,

new, or unusual situation.'")(citing id.). In particular, the Commissioner recognizes that an "apparent inconsistency may not be a true inconsistency" in the behavior of children with ADHD, for example, when the record contains "good, longitudinal evidence of hyperactivity at home and in the classroom, but show[s] a lack of hyperactivity during a CE." SSR 09-2p; see Straw v. Apfel, No. 98 CIV. 5089 (RPP), 2001 WL 406184, at *6, n. 9 (S.D.N.Y. Apr. 20, 2001) (Noting that the comments to the regulation state that it reflects the SSA's "longstanding policy" on structured settings, and specifies that ADHD is a disorder "that may not be as manifest in unusual settings as ... in typical settings, such as at home and at school. A child with such an impairment may appear to be relatively normal in an unusual setting but be very limited in others.") (quoting 65 Fed.Reg. 54747, 54753, 54781 (Sept. 11, 2000)).

20. Indeed, J.J.S.'s treating psychiatrist documented his reported behavior problems at home and at school, and specifically noted that his ability to focus was better in individual sessions or around fewer people, as compared with his ability to focus in family sessions, "due to lack of people in the room." (R. 330, 332). Although the ALJ noted J.J.S.'s improved behavior at treatment sessions, (R. 19; citing 330, 332), he failed to acknowledge the treating psychiatrist's caveat that the improvement was mentioned in comparison to J.J.S.'s behavior in a larger group setting. (Id.).

21. Finally, the Court notes that the ALJ also generally gave "great weight" to the opinion of agency reviewing physician, Dr. Meyer (pediatrics). (R. 21). In finding a less than marked impairment in the domain of attending and completing tasks, Dr. Meyer noted that J.J.S. stopped taking Concerta, an ADHD medication, due to hallucinations, and that "his teacher reports that he has difficulty with transitions and is

easily distracted," but also stated that J.J.S.'s "attention and concentration were intact at the [mental status exam]." (R. 299). Thus, to the extent the ALJ implicitly incorporated Dr. Meyer's opinion in this domain, it also rested on Dr. Baskin's one-time evaluation, and, therefore, does not constitute substantial evidence in support of the ALJ's determination.

22.   For the reasons stated above, the Court finds that the ALJ's discussion fails to elucidate why he did not find a marked limitation in the domain of attending and completing tasks, despite crediting evidence in favor of such a finding. Further, the ALJ failed to assign weight to consultative examiner Dr. Baskin's opinion, which reflected J.S.S's behavior in a "one-to-one", "unusual" situation. SSR 09-2p; see Ramirez v. Astrue, No. 08 CIV. 7609 (SAS), 2009 WL 2356259, at *8 (S.D.N.Y. July 29, 2009) (remanding for ALJ to provide a reasonable explanation for giving controlling weight to [consultative examiner], and to provide "a reasonable basis why the multiple impairments within the domain of attending to and completing tasks did not, in the aggregate, rise to the level of a marked limitation .").

23.   After carefully examining the record, this Court finds cause to remand this case to the ALJ for further administrative proceedings consistent with this decision. Plaintiff's Motion for Judgment on the Pleadings is therefore granted. Defendant's Motion for Judgment on the Pleadings is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED;

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this Decision and Order;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: June 2, 2016
    Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge